UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In Re:                                                               **CHAPTER 13**

Cecil Haynes,                                                   CASE #: 1:18-44538 (CEC)

                          Debtor.
-----------------------------------------------------------x

### DEBTORS' REPLY TO OBJECTION TO LOSS MITIGATION REQUEST

Darren Aronow, Attorney for the Debtor, Cecil Haynes, affirms under the penalty of perjury the truth of the following:

1. I am the Managing Partner of Aronow Law, P.C., attorney for the debtor, Cecil Haynes, (hereinafter "Mr. Haynes " or "Debtor") and as such I am fully familiar with the facts and circumstances of this matter by virtue of the file maintained by my office and numerous consultations with my client.

2. Mr. Haynes filed for Chapter 13 Bankruptcy protection on August 4, 2018 (Dkt #1).

3. On August 4, 2018 Mr. Haynes, by counsel, filed to participate in this Honorable Court's loss mitigation program. (Dkt #2).

4. On August 23, 2018, through counsel, U.S. Bank National Association, (hereinafter "Creditor" or "U.S. Bank") filed an objection to participation in the loss mitigation program on three basis, none of which appear to be valid reasons to deny entry into this Honorable Court's vaunted loss mitigation program. (Dkt #14).

5. Creditor begins the objection by pointing out to this Honorable Court and the author of General Order 582 Section V (D) that the Loss Mitigation Order may not be signed until and unless a hearing is conducted which sets the tone for Creditor's objection which is

made to frustrate the whole basis for the existence of the Bankruptcy Court, to allow the Honest Debtor to have a fresh start.

6. First, Creditor seeks to point out that the Debtor submitted a loss mitigation package to Ocwen, its servicer, days before filing for bankruptcy.

7. While it is true that an application was submitted days before the bankruptcy was filed, Ocwen chose to reject the application without review which is why Debtor seeks to enter into the Loss Mitigation Program, so that a good faith review can be performed under the watchful eye of this Honorable Court to ensure fairness and good faith are observed.

8. Creditor to bolster its argument seeks to demonstrate how somehow, Debtor demonstrated bad faith by revealing that his loss mitigation application includes the existence of $50,000.00, which is not in his petition.

9. However, that is simply not true and can be attributed to a simple scrivner's error in transcribing the information contained in the Debtor's bank account statement which clearly reflects that there was forty seven thousand ($47,000.00) dollars in his bank account and a simple review of the bank account statements would reveal that there absolutely no bad faith and no intent as clearly the debtor was not seeking to omit any information from the petition or hide a bank account containing those funds.

10. Thus upon a surface review of the petition, due to the scrivener's error on the AB schedule which shall be summarily amended to reflect the proper balance.

11. Had the Debtor truly sought to act in bad faith, the Debtor would not have included the bank statement in his petition.

12. Next, Creditor seeks to point out that Debtor's plan seeks to pay off any arrears without any request for deferment or reduction of payment on two other properties owned by the Debtor.

13. While it is unclear what the point the Creditor is trying to make since Debtor is not seeking to reduce the re-capitalized principal and interest, is also not seeking a non-interest bearing deferment, but rather a fair review, creditor's point is unclear since Creditor would be receiving a greater amount of interest over the longer term, and would get paid the full amount of all accrued interest and get their principal as well.

14. To reinforce the point, Creditor bizarrely refers to federally recommended limits, although no reference or cite is provided as to exactly, which federal guidelines Creditor is referring.

15. However, there are very well known federal guidelines which were instituted to decrease the number of foreclosure in the nation, apply specifically to

16. Those federal guidelines, which most banks use to model their current standard modification programs after, namely the Home Affordable Modification Plan Tier II, which creditor may have heard of, sets acceptable limits for home indebtedness at 10%-55% of the Gross House Income, which also included the possibility of a non-interest bearing 30% deferment of principal and interest as a balloon payment over 40 years, and yet amazingly, that is still universally considered affordable.[1]

17.  However, Debtor is not seeking a non-interest bearing deferment because even without the deferment, and even adopting Creditor's numbers and the truncated term of 360

---

[1] Based upon a reading of Creditor's objection, if this Court were in a vacuum, the argument might be credible that any payment which exceeds 35% percent of the gross household income is not affordable, however, that is just not the case as most standard modifications programs contain much more generous terms such as a 480 month term and an affordability range of 10%-55%.

months, which is a far cry from the standard 480 month term, the Debtor falls well within the standard range of affordability at just 40% of gross household income, a mere 5% above what Creditor is saying a generous range might be.

18. It should also be noted that nowhere in Creditor's opposition does it actually state what the limits of its client's loss mitigation programs are, merely stating that even if the creditor were to employ a "generous"[2] waterfall  based on HAMP Tier II, by merely extending the term of the loan to 480 months at 4% creates an affordable payment for Mr. Haynes under 35% of his Gross Household Income, using Creditor's numbers, would create a waterfall result as follows:  Monthly PITI Payment: $3518.74 / GHI $9775.00= represents 35.99% of Debtors Gross Household Income.

19. Finally, Creditor seeks to sway the Court by alerting the Court to a negative escrow balance of $45,000.00 which Creditor seems to imply is an astounding an insurmountable figure (even though in some places in Manhattan the negative escrow balance would represent just one year of taxes) the point is moot.

20. As previously discussed by Creditor, Debtor has $47,000.00 in his bank account which could be used to pay-off the negative escrow balance and also reflects a debtor who is able to save and in fact did save the money that had previously not gone to pay the mortgage because of a temporary financial hardship that debtor has overcome, hence the Chapter 13 filing and not a Chapter 7.

---

[2] It is unclear how the Creditor seeks to employ the term" extremely generous (*see* ¶26 of the Creditor's objection), when the "Hypothetical" waterfall that Creditor employs in its objection is ten years less than the allowable term under HAMP II Federal Guidelines, with no deferred payment of which HAMP II allowed up to 30% of the principal and interest to be deferred and a Gross Household Income Range of 10%-55% 15% percent higher than the limit which Creditor seeks to use.  Thus, objectively, the terms "extremely favorable" and "extremely generous" when describing the "hypothetical waterfall suggested by Creditor, put into context, are merely bald statements and window dressing meant to sway the Court, but hollow when examining the "hypothetical waterfall" against the reality of most standard modification waterfalls which are the same as the HAMP Tier II Federal Guidelines which still serve as the basis for most standard modification programs.

21. It is clear that Debtor has been saving against the eventuality that at some point he would resume paying his mortgage, which only demonstrates further the Debtor's honest intentions are to honor the debts he owes to his creditor in full.

22. Finally, as also pointed out in Creditor's papers, the debtor does derive income from his properties which make up a good portion of Mr. Haynes' income, a retiree who worked hard all his life and receives both pension monies and social security monies, which while not a wage income, is certainly a steady and sufficient monthly income with which he can pay his mortgage.

**WHEREFORE**, Mr. Haynes, an honest debtor looking for a fresh start, prays for an order denying Creditor's opposition to the loss mitigation order, to allow him to enter in the loss mitigation program and for such other further and different relief as to this Honorable Court seems just and proper.

Dated: September 20, 2018
      Woodbury, New York

Respectfully submitted,

/s/ Darren Aronow
DARREN ARONOW
ARONOW LAW P.C.
*Attorney for Debtor*
20 Crossways Park Drive, North Suite 210
Woodbury, New York 11797
Tel. (516) 762-6700
Fax. (516) 303-0066

Dorf & Nelson, LLP
Attorneys for US Bank
555 Theodore Fremd Avenue
Rye, New York 10580
Tel: (914) 381-7600
Fax: (914) 381-7608